**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SHOWING ANIMALS RESPECT AND KINDNESS,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR *et al.*,<br><br>    Defendants. | Civil Action No. 09–877 (CKK) |

**MEMORANDUM OPINION**
(August 12, 2010)

This is a Freedom of Information Act ("FOIA") case brought by Plaintiff Showing

Animals Respect and Kindness ("Plaintiff") against the United States Department of Interior

("DOI") and its component, the United States Fish and Wildlife Service ("FWS") (collectively,

"Defendants"), relating to Plaintiff's requests for information about Defendants' criminal

investigation of Lee Marvin Greenly and Troy Lee Gentry for hunting and transporting a bear in

violation of the Lacey Act, 16 U.S.C. §§ 3371-78. Defendants have produced records responsive

to Plaintiff's FOIA requests, withholding and/or redacting some records (including photographs

and video recordings) pursuant to various FOIA Exemptions. Defendants have filed a [16]

Motion for Summary Judgment Or Alternatively, Motion for Partial Summary Judgment and *In*

*Camera* Review of Certain Records, claiming that they have complied with all of their

obligations under FOIA. Plaintiff opposes Defendants' motion and has filed its own [20] Motion

for Summary Judgment, contending that Defendants have improperly claimed an exemption with

respect to certain photographs, videos, and written records containing information about Messrs.

Greenly and Gentry. The parties have each filed replies to these motions, and they are now ripe

for decision. After a thorough review of the parties' submissions and attachments thereto and

applicable case law and statutory authority, the Court shall GRANT-IN-PART Plaintiffs' Motion

for Summary Judgment and DENY-IN-PART Defendants' Motion for Summary Judgment with

respect to three video recordings identifying Messrs. Greenly and Gentry; the Court shall

GRANT-IN-PART Defendants' Motion for Summary Judgment and DENY-IN-PART Plaintiff's

Motion for Summary Judgment in all other respects.

## I. BACKGROUND

### A. FWS and DOI's Investigation into Lee Marvin Greenly and Troy Lee Gentry

Lee Marvin Greenly ("Greenly") is the operator of Minnesota Wildlife Connections, a

wildlife photography business providing captive-held animals for individuals to photograph in a

wild setting. Pl.'s Stmt.[1] ¶ 1. In 1998, Greenly acquired "Cubby," a trophy-caliber,

tame/captive-reared black bear. *Id.* After Cubby developed mouth problems that required

expensive dental work, Mr. Greenly sold Cubby to Troy Lee Gentry ("Gentry"), a singer best

known as half of the country-music duo Montgomery Gentry. *See id.* ¶¶ 2, 16; Decl. of Steve

Hindi ¶ 17 & Att. 14 ("Country Star Charged in Tame Bear Killing"). The men arranged to have

---

[1] As a preliminary matter, the Court notes that it strictly adheres to the text of Local Civil Rule 7(h) (formerly Rule 56.1 when resolving motions for summary judgment). *See Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002) (finding district courts must invoke the local rule before applying it to the case). The Court has advised the parties that it strictly adheres to Rule 7(h) and has stated that it "assumes facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." [3] Order at 1 (May 13, 2009). Thus, in most instances the Court shall cite only to one party's Statement of Material Facts ("Stmt.") unless a statement is contradicted by the opposing party in its responding statement ("Resp. Stmt."). The Court shall also cite directly to evidence in the record, where appropriate.

Gentry kill Cubby with a bow and arrow while the bear was enclosed in a one-acre pen on Greenly's property.  Pl.'s Stmt. ¶ 2.  The taking of the black bear was videotaped and later edited to appear as though Gentry killed the bear in a true "fair chase" hunting situation.  *Id.*  In the video footage, the shooter is shown climbing into a tree stand, dressed in camouflage with a bow and arrow, drawing the bow, shooting an arrow that strikes the bear in the side and shooting a second arrow at the bear as it is walking away.  *Id.*  The video was edited to show the arrow traveling in slow motion as it struck the bear.  *Id.*  The video also contains a narrative in which the shooter talks to the camera about the hunt and how excited he was to have the opportunity to harvest the bear.  *Id.*  At least some of this video footage was prepared by Gentry for later use on television or in a music video.  *Id.* ¶ 3.  Gentry also arranged for photographs to be taken that implied he had killed a wild bear.  *Id.* ¶ 4.  (Defendants have released copies of these photographs with the faces of Gentry and Greenly redacted.)  *Id.*

After killing Cubby, Gentry and Greenly tagged him with a Minnesota hunting license and registered the bear with the Minnesota Department of Natural Resources as though it was lawfully taken from the wild population.  *See* Pl.'s Mot. for Summ. J., Att. 1 (Plea Agreement) at 395-96.[2]  The men then facilitated the shipment of the bear's hide from Minnesota to a taxidermist in Kentucky.  *Id.* at 396.  Gentry gave a copy of the video of the shooting to the taxidermist.  Defs.' Resp. Stmt. ¶ 3.[3]  A video showing a stuffed Cubby in Gentry's game room was aired on television (on the Outdoor Channel) three times during the week of July 24, 2006.

---

[2] Page numbers refer to the numbers affixed by Defendants during their document production.

[3] The parties refer to this video footage by the disk on which it is maintained by Defendants, which is "Disk 9."  *See* Defs.' Resp. Stmt. ¶ 8.

*Id.* ¶ 5; Pl.'s Mot. for Summ. J., Att. 10 (Record of Information).[4]

During the spring of 2004, FWS began an investigation concerning wildlife violations occurring on the Rice Lake National Wildlife Refuge near Sandstone, Minnesota. Pl.'s Stmt. ¶ 6. The initial investigation revealed equipment on the refuge suggesting that unlawful hunting was occurring, and the officers recognized some of that equipment as belonging to "a property owner in the immediate area who operated a wildlife photography business." *Id.* The investigation continued over the following year, and Greenly provided conflicting accounts of his activities, including guiding black bear hunts. *Id.* ¶ 7. He later told investigators that the "large trophy caliber bear" that had been killed in 2004 was not a wild bear, as he had previously claimed, but was actually a bear raised tame in captivity. *Id.* During the investigation, FWS investigators spoke with the taxidermist who stuffed Cubby, who provided the investigators with a copy of the video depicting the hunt. Defs.' Resp. Stmt. ¶ 8.

In 2006, attorneys from the U.S. Department of Justice charged Gentry and Greenly with felony violations of the Lacey Act, which prohibits, *inter alia*, the transport through interstate commerce of wildlife taken in violation of any state law, 16 U.S.C. § 3372. Pl.'s Stmt. ¶ 10. Both Greenly and Gentry entered plea agreements with the government. Greenly entered a plea of guilty to two felonies under the Lacey Act and was sentenced to three years' probation, fined $1000, and ordered to pay restitution in the amount of $3068. Defs.' Stmt. ¶ 14. Gentry entered a plea of guilty to one misdemeanor count of conspiracy to violate the Lacey Act and was sentenced to three months' probation and fined $15,000. *Id.* In Gentry's plea agreement, which

_____

[4] The parties refer to this video footage as "Disk 6," and it was created from video footage on another disk maintained by Defendants, "Disk 8." *See* Defs.' Resp. Stmt. ¶ 5.

was released by Defendants in response to Plaintiff's FOIA request, Gentry agreed that he had conspired to kill a black bear in a fenced enclosure and to submit a false record to the Minnesota Department of Natural Resources registering the animal as lawfully taken, with the intent to transport the bear in interstate commerce. *See* Pl.'s Mot. for Summ. J., Att. 1 (Plea Agreement) at 394-95.

### B. *FOIA Requests Submitted by Plaintiff*

Plaintiff Showing Animals Respect and Kindness is a nonprofit organization dedicated to the protection of animals both in captivity and in the wild. Pl.'s Stmt. ¶ 11. On or about October 25, 2007, the FWS Office of Law Enforcement ("OLE") received a FOIA request from Plaintiff's president, Steve Hindi. Defs.' Stmt. ¶ 1. The request was for "documents relating to the UNITED STATES OF AMERICA v. LEE MARVIN GREENLY and TROY LEE GENTRY CASE," specifically "[c]opies of any videotapes seized." *Id.* ¶ 2. Plaintiff states that it filed the request "[s]eeking to understand why the government did not pursue stiffer penalties against Mr. Gentry and Mr. Greenly for the senseless slaughter of Cubby." Pl.'s Stmt. ¶ 12. The FWS OLE conducted a search of its investigative case file and located three video recordings responsive to Plaintiff's request. Defs.' Stmt. ¶ 3. On November 23, 2007, FWS informed Plaintiff that three video recordings identifying individuals had been located and that the videos were being withheld pursuant to FOIA Exemption 6.[5] Later, FWS asserted that the videos were also

---

[5] FOIA Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

withheld pursuant to FOIA Exemption 7(C).[6]

In the *Vaughn* index[7] produced by Defendants in this litigation, Defendants describe the

three videos as follows. As to the video on Disk 6:

> The video recording is approximately 5 minute 57 seconds long and is a segment of a cable television show called "Hunter's Specialties: Game Room." In this video recording, an individual, who identifies himself by name, leads a tour of his residence, including his "game room," where a number of stuffed and mounted animals are displayed. One of the animals displayed in the video recording is a black bear, the killing of which was the subject of the OLE/FWS investigation. The individual narrates the video recording and is in view virtually throughout the recording, as is the interior of his house and garage, and the view from within his garage onto the street. To FWS's knowledge, this video recording aired on cable television three times in February[8] 2006. To our knowledge, it has not aired since then and is not now available to the public.

Defs.' Mot. for Summ. J., *Vaughn* Index ("*Vaughn* Index") at 2-3. As to the second video

withheld, on Disk 8:

> The video recording is approximately 23 minutes and 44 seconds long and appears to consist of the unedited footage from which the "Game Room" segment, referenced above as Disc #6, was derived. In addition to the material included in the first video recording, this video recording includes more views of the interior of the individual's house. The video recording also shows a view of the city skyline from a window in

---

[6] FOIA Exemption 7(C) covers "records or information compiled for law enforcement purposes, but only to the extent that the production of such records and information . . .could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . ." 5 U.S.C. § 552(b)(7)(C).

[7] In *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), the D.C. Circuit held that agencies should prepare an itemized index correlating each withheld document (or portion thereof) with a specific FOIA exemption and the agency's justification for nondisclosure. *See* 484 F.2d at 827.

[8] Defendants' original *Vaughn* index erroneously states that the video aired in February 2006; Defendants have clarified that the footage was recorded in February 2006 and aired three times during the week of July 24, 2006. *See* Supp. Decl. of Marion Dean ¶ 4. According to a document produced by Defendants, the Outdoor Channel planned to air the segment again in October 2006 but pulled it from the schedule due to the FWS's investigation. *See* Pl.'s Mot. for Summ. J., Att. 10 (Record of Information).

the house. To FWS's knowledge, this video recording was never made public.

*Id.* at 3. As to the third video, on Disk 9:

> This video recording is approximately 12 minutes and 40 seconds long and shows the hunting of the black bear. This video recording starts with a title screen saying "Minn. Bear." The individuals, who were the subjects of the FWS investigation, are pictured throughout this video recording. The first scene of this video recording shows the individuals on the porch of a building where they briefly discuss the weather and their hunting plans. In the next scene, one of the individuals, armed with a bow and several arrows, climbs a tree to a platform. Two minutes and 56 seconds into the video recording, the black bear is shot with an arrow by the individual on the platform. In the next scene, the two individuals track the wounded bear. Finally, the two individuals pose with the bear's carcass. To FWS's knowledge, this video recording was never made public.

*Id.* The FOIA officer in charge of responding to Plaintiff's request, Marion Dean, determined that these videos were exempt from FOIA because the individuals in the videos were subjects of an FWS/OLE investigation. Decl. of Marion Dean ¶ 7. With respect to the footage on Disks 6 and 8, Ms. Dean has explained that the video footage shows the interior of the Gentry family home. Supp. Decl. of Marion Dean ¶ 5. Plaintiff filed an administrative appeal with respect to FWS's withholding these three videos on December 17, 2007. *Id.* ¶ 8. However, FWS did not rule on the appeal prior to the filing of this action.

On or about May 7, 2009, Defendants received a second FOIA request from Plaintiff. Defs.' Stmt. ¶ 10. Plaintiff's second request sought "all records, including any photographs, videotapes, and e-mails, related to the investigation and the subsequent plea agreement/sentencing of both Troy Gentry and Marvin Greenly." *Id.* FWS personnel conducted a search for responsive records and released a set of responsive records on August 28, 2009. *Id.* ¶ 12. Defendants informed Plaintiff that some documents had been withheld pursuant to FOIA

Exemptions 3, 5, 6, 7(C) and 7(E).[9]  *Id.*  Defendants provided a second production on September 4, 2009.  *Id.*  The records or materials responsive to Plaintiff's two FOIA requests consist of 827 pages and eleven CD/DVDs.  *Id.* ¶ 16.  Defendants redacted the names and faces of Gentry and Greenly from many responsive records.  Pl.'s Stmt. ¶ 14.  Their names were not redacted on some other responsive documents, and the name of Greenly's business, Minnesota Wildlife Connections, was not redacted.  *Id.* ¶ 15.

      C.      *The Filing of This Action*

Plaintiff filed this action on May 12, 2009.  On September 11, 2009, Defendants filed their Motion for Summary Judgment, which included a *Vaughn* index listing 127 records withheld either in whole or in part pursuant a FOIA exemption.  On October 9, 2009, Plaintiff filed its Opposition and Cross-Motion for Summary Judgment.  In its Opposition, Plaintiff contends that Defendants improperly withheld the three responsive video recordings, improperly redacted the names and faces of Greenly and Gentry from other responsive records, and improperly withheld nonexempt portions of various other records.  Both parties also filed briefs in reply.

## II.  LEGAL STANDARD

In reviewing motions for summary judgment under FOIA, the Court must conduct a *de novo* review of the record.  *See* 5 U.S.C. § 522(a)(4)(B).  In the FOIA context, "*de novo* review

---

[9] FOIA Exemption 3 covers matters that are "specifically exempted from disclosure by statute . . . ."  5 U.S.C. § 552(b)(3).  FOIA Exemption 5 covers "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  *Id.* § 552(b)(5).  FOIA Exemption 7(E) covers records or information compiled for law enforcement purposes to the extent they "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . ."  *Id.* § 552(b)(7)(E).

requires the court to 'ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure under the FOIA.'" *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)). Summary judgment is proper when "the pleadings, the discovery [if any] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

All underlying facts and inferences are analyzed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Only after an agency seeking summary judgment proves that it has fully discharged its FOIA obligations is summary judgment appropriate. *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983). In opposing a motion for summary judgment, a party must offer more than conclusory statements. *See Broaddrick v. Exec. Office of the President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (citing *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987)). Indeed, a plaintiff pursuing an action under FOIA must establish that the agency has improperly claimed an exemption as a matter of law or that the agency failed to segregate and disclose all nonexempt information in the requested documents. *See Perry-Torres v. Dep't of State*, 404 F. Supp. 2d 140, 142 (D.D.C. 2005).

Congress enacted FOIA for the purpose of introducing transparency to government activities. *See Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984). Congress remained sensitive, however, to the need to achieve balance between this objective and the vulnerability of "legitimate governmental and private interests [that] could be harmed by release

of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992); *see also Summers v. Dep't of Justice*, 140 F.3d 1077, 1079 (D.C. Cir. 1998). Accordingly, FOIA provides nine exemptions pursuant to which an agency may withhold requested information. *See* 5 U.S.C. §§ 552(a)(4)(B), (b)(1)-(9). The agency must demonstrate the validity of any exemption that it asserts. *See id.*; *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) ("Consistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents.") In addition, summary judgment may be granted on the basis of the agency's accompanying affidavits or declarations if they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). These affidavits may be submitted by an official who coordinated the search, and need not be from each individual who participated in the search. *See SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Where the adequacy of the search is in doubt, the agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351. But "[t]here is no requirement that an agency search every record system." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

An agency also has the burden of detailing what proportion of the information in a document is nonexempt and how that material is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). Any nonexempt information that is reasonably segregable from the requested records must be disclosed. *Oglesby*

*v. U.S. Dep't of the Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996). In addition, district courts are

obligated to consider segregability issues *sua sponte* even when the parties have not specifically

raised such claims. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028

(D.C. Cir. 1999).

### III. DISCUSSION

The parties have filed cross-motions for summary judgment regarding Defendants'

production of documents in response to Plaintiff's FOIA requests. However, Plaintiff does not

dispute the adequacy of Defendants' search or Defendants' withholding of certain documents not

related to Gentry or Greenly. Accordingly, the Court may grant summary judgment to

Defendants with respect to those issues and limit its inquiry to the areas actually in dispute. First,

Plaintiff contends that Defendants may not withhold on privacy grounds the video recordings

purportedly showing Greenly and Gentry killing a black bear and Gentry displaying the stuffed

bear in his "game room." Second, Plaintiff argues that Defendants may not redact Greenly's and

Gentry's names and faces from responsive records relating to Defendants' investigation into their

misconduct. Third, Plaintiff objects to Defendants' withholding of a presentence investigation

report relating to Greenly. Fourth, Plaintiff objects to Defendants' withholding of certain records

under Exemption 7(E). The Court shall address each of these contentions below.

A.     *Video Recordings of Greenly and Gentry*

Defendants claim that three video recordings responsive to Plaintiff's request are exempt

from disclosure pursuant to FOIA Exemptions 6 and 7(C). Exemption 6 protects information

about individuals in "personnel and medical files and similar files the disclosure of which would

constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption

7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such records and information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C).[10] Exemptions 6 and 7(C) require the court to balance the privacy interests of the individual whose records are sought with the public's interests in their disclosure. *Beck v. Dep't of Justice*, 997 F.2d at 1491. The Supreme Court has broadly interpreted the personal privacy interests protected by Exemption 7(C).[11] *Id.*; *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 765-66 (1989) (recognizing a strong privacy interest in individualized information collected by law enforcement agencies). It has long been recognized that disclosing information about an individual's involvement in law enforcement proceedings may constitute an unwarranted invasion of personal privacy for purposes of Exemption 7(C). *See Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) ("On the privacy side of the ledger, our decisions have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants.")

In *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991), the D.C. Circuit explained that the personal information of individuals contained in law enforcement records are

---

[10] Plaintiff does not argue that these videos (and other records compiled by Defendants) were not compiled for law enforcement purposes.

[11] Because Exemption 7(C) is somewhat broader than Exemption 6, *see Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165-66 (2004), the Court need not address Exemption 6 separately. In any event, the D.C. Circuit "has deemed the privacy inquiry of Exemptions 6 and 7(C) to be essentially the same." *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1125 (D.C. Cir. 2004).

presumptively exempt under Exemption 7(C) because, "unless there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity, and access to the names of private individuals appearing in the agency's law enforcement files is necessary in order to confirm or refute that evidence, there is no reason to believe that the incremental public interest in such information would ever be significant." *Id.* at 1205-06; *see Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) ("As a general rule, *SafeCard* directs an agency to redact names, addresses, or other identifiers of individuals mentioned in investigatory files in order to protect the privacy of those persons.")[12]  However, this presumption does not apply where an individual has voluntarily disclosed his involvement in the records at issue. *See Nation Magazine*, 71 F.3d at 896 (holding that an individual's public statements that he was involved with federal drug interdiction operations "effectively waive [his] right to redaction of his name from documents on events that he has publicly disclosed.")  Similarly, at least one court in this District has found that this presumption should not apply in cases where the individual's identity has already been disclosed via the filing of criminal charges against the individual. *See, e.g., Long v. U.S. Dep't of Justice*, 450 F. Supp. 2d 42, 69 (D.D.C. 2006) ("[T]he categorical rule announced in *SafeCard Services* . . . does not apply where plaintiffs are seeking information solely about individuals who have been publicly charged in a criminal case or publicly named in a civil action.")

Although Defendants have refrained from explicitly confirming that the individuals in the three videos are Greenly and Gentry, there is no question that it is their privacy interests that

---

[12] Although *SafeCard* focused on names and addresses, the D.C. Circuit has applied it to other personal information such as photographs. *See, e.g., Accuracy in Media, Inc. v. Nat'l Park Serv.*, 194 F.3d 120 (D.C. Cir. 1999).

Defendants are seeking to protect by withholding the videos.[13]  Defendants admit that the individuals on Disk 9 (the video of the bear shooting) "were subjects of the FWS investigation," and Defendants admit that this video was recovered from the taxidermist who stuffed the bear, who had received the video from Gentry.  *See Vaughn* Index at 3; Defs.' Resp. Stmt. ¶ 3. Similarly, Defendants admit that Disk 6, created from Disk 8, shows a stuffed Cubby in Gentry's game room and that this footage was aired on TV three times in 2006.  *See* Defs.' Resp. Stmt. ¶ 5.  Moreover, Defendants have argued in their briefs that the videos were withheld to protect Greenly's and Gentry's privacy interests.  *See, e.g.*, Defs.' Reply at 3 ("There is no doubt that the disclosure of these videos would result in an invasion of their [Greenly's and Gentry's] privacy.")

Therefore, the question before the Court is whether three video recordings of the targets of an agency investigation that were created by those targets and obtained during that investigation may be withheld on privacy grounds pursuant to Exemption 7(C) when the targets of the investigation have been publicly charged with federal crimes arising out of that investigation and have entered plea agreements with the government to resolve those charges. The case law requires that the Court balance the privacy interests of Greenly and Gentry in these videos with the public interest in disclosure.

       1.    <u>The Private Interest in Withholding the Videos</u>

Defendants maintain that "[l]ike all private individuals, Mr. Gentry and Mr. Greenly have a substantial privacy interest in not being associated with law enforcement proceedings."  *See* Defs.' Reply at 2.  That may be true, but in this case, the cat is out of the bag: Gentry and Greenly

---

[13] Defendants also contend that, with respect to the videos on Disks 6 and 8, Gentry's family members have a protectable privacy interest as well.  The Court shall address this interest below.

were publicly charged in an indictment with violations of the Lacey Act as a result of Defendants' investigation and ultimately pled guilty in plea agreements with the government. Therefore, whatever privacy interest Gentry and Greenly have in the videos, it cannot be their interest in keeping their names out of law enforcement proceedings.

That is not to say that Gentry and Greenly have no privacy interests in the videos that are protected by Exemption 7(C). The Supreme Court has recognized, for example, that convicted criminals have a privacy interest in their rap sheets, notwithstanding the fact that records of prior convictions are publicly available. *See Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762-71 (1989); *id.* at 770 ("[T]he fact that an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information." (citation and quotation marks omitted)). Courts have also generally recognized that individuals have a particular interest in avoiding public disclosure of their images. *See, e.g.*, *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 170 (2004) ("FOIA recognizes surviving family members' right to personal privacy with respect to their close relative's death-scene images."); *Times Picayune Pub'g Corp. v. U.S. Dep't of Justice*, 37 F. Supp. 2d 472, 477 (E.D. La. 1999) (rejecting FOIA request for convicted defendant's mug shot, noting that "a mug shot's stigmatizing effect can last well beyond the actual criminal proceedings"). Therefore, the Court finds that Greenly and Gentry have some privacy interest in preventing the disclosure of inculpatory video recordings containing their likenesses.

Given the particular circumstances of this case, however, Gentry's and Greenly's privacy interests are quite attenuated. Unlike surveillance tapes that capture a person's image without their consent, the videos at issue here were created by Gentry and Greenly expressly for

distribution to the public. With respect to Disk 9, Gentry prepared the video for later use on television or a music video, and he later distributed that video to the taxidermist, who gave it voluntarily to FWS investigators. The video on Disk 8 was filmed for the purpose of creating a video segment (Disk 6) that would be (and ultimately was) aired on national cable television. There is nothing in the record to suggest, and Defendants have not argued, that Gentry and Greenly appeared in these videos without their knowing consent. Under these circumstances, neither Gentry nor Greenly could have expected that their appearances on these videos would remain private. *See Nation Magazine*, 71 F.3d at 896 (finding that public disclosures effectively waive the right to redaction); *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 88-89 (D.D.C. 2003) (finding minimal privacy interest with respect to individuals who voluntarily turned over their "home videos" with no assurances of confidentiality). Accordingly, their privacy interests in nondisclosure are minimal.[14]

Defendants argue that Gentry's privacy interests are substantial because the release of the videos could reasonably be expected to lead to embarrassment or harassment. Defendants point to negative comments on Plaintiff's website about Gentry and his unlawful conduct as evidence of the harassment that is likely to come if the videos are disclosed. However, the comments identified by Defendants are based on information that was publicly disclosed during the criminal

_____

[14] Plaintiff argues that Gentry's status as a country music star further diminishes his right to privacy. It is true that some courts have suggested that "public figures" have a diminished right to privacy under FOIA, but nearly all of these cases involve government officials or candidates for federal office, not celebrities from the world of entertainment. *See, e.g.*, *Nation Magazine*, 71 F.3d at 894 n.9; *Common Cause v. Nat'l Archives & Records Serv.*, 628 F.2d 179, 184 (D.C. Cir. 1980). Moreover, the parties dispute the extent to which Gentry qualifies as a "public figure" and his level of fame as a country music star. Accordingly, the Court declines to consider Gentry's celebrity as a factor in the considering his privacy interest in the videos.

proceedings against Gentry and Greenly, which occurred roughly four years ago. It is unclear how the release of the videos at issue would materially add to the invasion of privacy that has already occurred. Moreover, the relevant question is not whether there is likely to be an intrusion, but whether any intrusion is "unwarranted." *See* 5 U.S.C. § 552(b)(7)(C) (exempting records only to the extent that they "could reasonably be expected to constitute an *unwarranted* invasion of personal privacy") (emphasis added). To the extent that Defendants seek to protect Gentry and Greenly from opprobrium based on their unlawful conduct, such an invasion of privacy is not necessarily unwarranted. *Cf. Cong. News Syndicate v. U.S. Dep't of Justice*, 438 F. Supp. 538, 544 (D.D.C. 1977) (rejecting argument that embarrassment to innocent political contributors due to the "aura of Watergate" provides a basis for nondisclosure on the ground that "the risk of such invasion [of privacy] was assumed by anyone making or receiving contributions reportable under [federal law]"), *cited with approval in Common Cause v. Nat'l Archives & Records Serv.*, 628 F.2d 179, 184 n.12 (D.C. Cir. 1980). Therefore, the Court finds that the Gentry and Greenly have minimal privacy interests that would be protected by withholding these videos.

In their opposition to Plaintiff's motion for summary judgment, Defendants argue for the first time that because Disks 6 and 8 show the interior of Gentry's family home, they should be withheld to protect the privacy interests of Gentry's family members. Defendants cite *New York Times Co. v. NASA*, 782 F. Supp. 628 (D.D.C. 1991), a case in which the court found that relatives of the astronauts who perished in the Challenger explosion had a privacy interest in a tape that contained recordings of the astronauts' voices during their final moments. That case, however, is quite distinct from this one. Here, the only plausible privacy interest that Gentry's

family members have is avoiding disclosure of images of the interior of their home.[15]  Again,

Gentry allowed this video to be filmed in the home, and Defendants have produced no evidence

that the family members (who do not appear in the videos) objected to this footage.  Indeed, the

contents of Disk 6 were shown on national television, and Gentry's family members were

presumably aware that the videographer who shot the raw footage on Disk 8 was doing so for the

express purpose of producing a segment for distribution to a national audience.  Accordingly,

Defendants have failed to show that Gentry's family members have anything more than a *de

minimis* privacy interest in the content on Disks 6 and 8.

### 2.  The Public Interest in Disclosing the Videos

Defendants argue that there is no public interest in disclosing the three videos sought by

Plaintiff because the videos do not contain any information that would, if revealed, shed light on

the conduct of any government agency.  The Supreme Court has long recognized that the central

purpose of FOIA is "to open agency action to the light of public scrutiny."  *Dep't of Air Force v.

Rose*, 425 U.S. 352, 372 (1976).  "Official information that sheds light on an agency's

performance of its statutory duties falls squarely within that statutory purpose.  That purpose,

---

[15] Defendants suggest that the video footage might disclose the location of Gentry's home because it contains views of the area immediately outside the home.  *See* Supp. Dean Decl. ¶¶ 3, 5.  However, courts have recognized that "disclosure of site specific information is not 'inherently and always a significant threat' to privacy."  *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 36 (D.C. Cir. 2002); *see also Hertzberg*, 273 F. Supp. 2d at 88 ("[T]he privacy interest of the homeowners in their names, addresses and other identifying information—such as the location of their homes—is insignificant in this case.")  Furthermore, Plaintiff does not object to the redaction of certain information, such as street signs, that could reveal the specific address of Gentry's house.  The Court finds that such redactions would sufficiently protect the Gentry family's privacy interest in the location of their residence.  The Court agrees with Plaintiff, however, that views of a city skyline (which could disclose the city in which Gentry lives) need not be redacted.

however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Reporters Committee*, 489 U.S. at 773. However, the D.C. Circuit has explained that "the mere fact that records pertain to an individual's activities does not necessarily qualify them for exemption. Such records may still be cloaked with the public interest if the information would shed light on agency action." *Nation Magazine*, 71 F.3d at 894-95. The question is whether the disclosure "contribut[es] significantly to public understanding *of the operations or activities of the government*." *Reporters Committee*, 489 U.S. at 775. The public interest analysis focuses on the public's right to know "what the Government is up to," *id.* at 780; neither the identity of the FOIA requester nor the purpose for which the records are requested is relevant. *Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005).

Plaintiff argues that the public interest will be served by disclosure because the videos will shed light on why the government permitted Gentry and Greenly to plead guilty to relatively minor charges. Plaintiff points to other cases involving Lacey Act violations in which defendants received terms of imprisonment for their crimes, whereas Gentry and Greenly got off with probation, fines, and restitution.[16] Plaintiff argues there is a strong public interest in the videos because they will assist the public in understanding the operation of FWS in enforcing laws protecting animals. In *Reporters Committee*, the Supreme Court recognized that "matters of substantive law enforcement policy . . . are properly the subject of public concern." 489 U.S. at

---

[16] Plaintiff also argues that Gentry (and possibly Greenly) could have been (but were not) prosecuted under 18 U.S.C. § 48, a federal statute criminalizing the creation, sale, or possession of certain depictions of animal cruelty. However, the Supreme Court recently struck down that statute as unconstitutionally overbroad. *See United States v. Stevens*, 130 S. Ct. 1577 (2010).

766 n.18.  Accordingly, courts have found that the public has an interest in obtaining records that reveal the manner in which the government investigates and prosecutes criminal activity.  *See, e.g.*, *Nation Magazine*, 71 F.3d at 895 (finding a public interest in records pertaining to federal authorities' drug interdiction efforts); *Steinberg v. U.S. Dep't of Justice*, 179 F.R.D. 366, 370 (D.D.C. 1998) (finding a "significant" public interest in the disclosure of documents relating to the criminal investigation of alleged counter-terrorist activities); *see also Globe Newspaper Co. v. FBI*, No. 91-13257, 1992 WL 396327, at *4 (D. Mass. Dec. 29, 1992) (finding that the public interest in finding out how much the government paid an informant outweighed the informant's *de minimis* privacy interest).  Thus, the public has an interest in finding out whether and under what circumstances certain individuals receive preferential treatment from government investigators and prosecutors.  *See, e.g.*, *Lissner v. U.S. Customs Serv.*, 241 F.3d 1220, 1223 (9th Cir. 2001) (finding that there was a public interest in determining whether Customs officials gave preferential treatment to law enforcement officers who committed a crime).[17]

Defendants argue that these videos are relevant only as to the unique facts and circumstances of Gentry's and Greenly's criminal proceedings and thus would not shed any light on the government's operations as a whole.  The Court recognizes that generally speaking, information relating to a single criminal investigation will shed more light on the conduct of the

---

[17] Plaintiff does not argue that there was any negligence or misfeasance on the part of government officials in investigating or prosecuting Gentry and Greenly.  "[W]here there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must . . . produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004).  Defendants have not argued that the *Favish* standard should apply in this case.

individuals being investigated than on the government agencies doing the investigation. But unlike criminal rap sheets and other personal data that happens to be warehoused by the government, *see Reporters Committee*, 489 U.S. at 774-75, the videos in question were gathered by Defendants in the course of investigating federal crimes and were relied on by the government in making the decision to charge Gentry and Greenly with violations of federal law. Therefore, the videos will assist the public in learning "what the Government is up to" with respect to prosecutions for Lacey Act violations. Co*mpare Prison Legal News v. Exec. Office for U.S. Attorneys*, No. 08-cv-1055, 2009 WL 2982841, at *3 (D. Colo. Sept. 16, 2009) (discussing the public's interest in evaluating the government's decision to seek the death penalty). Defendants argue that because FWS and DOI do not make decisions about what crimes to charge or what plea offers to make (as those decisions are made by the Department of Justice), disclosure of the videos will not shed any light on Defendants' conduct. However, the public interest in disclosure under FOIA is not limited to the agency processing the request for records; the public has a right to know what their "government" is up to, not just what a particular agency is up to. Federal agencies often take action based on information in records maintained by other agencies. *See, e.g.*, *Lardner v. Dep't of Justice*, 638 F. Supp. 2d 14, 28 (D.D.C. 2009) (finding public interest in records held by the Department of Justice because it sheds light on the President's exercise of clemency power), *appeal docketed*, No. 09-5337 (D.C. Cir. Nov. 23, 2009). Therefore, the Court finds that there is a cognizable public interest in releasing the videos that must be balanced against the privacy interests of Gentry and Greenly.

       3.     Balance of Interests

      The Court finds that the public interest in disclosing the three videos outweighs the

privacy interests of Gentry and Greenly in withholding them. These videos are undoubtedly a critical aspect of the evidence gathered by Defendants to support the charges brought against Gentry and Greenly; indeed, the contents of Disk 9 are explicitly referenced in Gentry's plea agreement. Although the public interest in their disclosure may not be great, it outweighs the minimal privacy interests of Gentry and Greenly. These videos were willingly and knowingly made for the purpose of distributing their contents to the public on television or in a music video. Indeed, the contents of Disk 6 were actually broadcast three times on national television. Defendants obtained the videos voluntarily from third parties during their investigation, and those third parties had obtained them voluntarily from Gentry. Accordingly, neither Gentry nor Greenly could reasonably expect that their appearances on the videos would remain private. Therefore, the Court shall order Defendants to disclose the videos to Plaintiff after making any further redactions necessary to protect the privacy interests of other parties who may appear in the videos.[18] Plaintiff's motion for summary judgment shall be granted-in-part with respect to these videos, and Defendants' motion for summary judgment shall be denied-in-part.

      B.     *Photographs of Gentry and Greenly and Records Redacting Their Names*

Plaintiff objects to Defendants' redactions of the faces of Gentry and Greenly in certain photographs released to Plaintiff as well as the redaction of their names in other responsive records. Plaintiff contends that these photographs and records should be produced without redactions because it is clear whose faces and names are being redacted and several unredacted

---

[18] The only redactions that the parties have identified as potentially necessary are redactions of information that would reveal the specific location of Gentry's home, which is portrayed in Disks 6 and 8.

photographs are publicly available, diminishing any privacy interests in other photographs.[19]

The public interest in disclosing these materials is the same as the public interest in the videos. However, the privacy interests of Gentry and Greenly in these materials are quite different. Unlike the videos, which the parties agreed were created for public distribution, there is no similar evidence in the record that establishes that the photographs at issue were ever intended to be distributed publicly. According to the supplemental declaration of Marion Dean, the photographs appear to be personal photographs collected from suspects, and FWS has no evidence that they were ever distributed publicly (except for one photograph that has since been released). Supp. Dean Decl. ¶¶ 12-14. Although there is evidence in the record to suggest that at least some of these photos were taken deliberately by Gentry or Greenly and staged to make it look as if Cubby was killed in a "fair chase" hunt, that does not establish that the photos were taken for public dissemination. With respect to the investigation records with redacted names, Gentry and Greenly had no involvement in their creation, and it certainly cannot be said that they waived any privacy rights in those records.

The fact that it may be obvious to Plaintiff whose faces or names are redacted from these records does not mean that the subjects of those redactions have no privacy interest in avoiding disclosure. *See Taylor v. U.S. Dep't of Justice*, 268 F. Supp. 2d 34, 38 (D.D.C. 2003) ("[T]he fact that the requestor might be able to figure out some or all of the individuals' identities through other means, or the fact that their identities have already been disclosed, does not diminish their privacy interests in not having the documents disclosed." (citation omitted)).

---

[19] Defendants have produced one photograph that Plaintiff identified as publicly available. *See* Supp. Dean Decl. ¶ 12.

Individuals have a privacy interest even as to information that has been previously disclosed publicly. *Reporters Committee*, 489 U.S. at 763-64. This Court is mindful that in the internet age, pictures and personal information can cascade through networks to millions of people based on a single disclosure. Exemption 7(C) is designed to protect individuals from the stigmatizing effect of having their names associated with law enforcement records. Therefore, the Court finds that the public interest in disclosing the names of Gentry and Greenly in FWS investigation records does not outweigh their privacy interests in avoiding such a disclosure.

Plaintiff argues that because some of the images of Gentry and Greenly appear to be in the public domain, their privacy interests in similar photographs is diminished. However, an agency need not disclose an exempt record unless there is an "identical" record in the public domain, and it is the requester's burden to show that the information is freely available. *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1280 (D.C. Cir. 1992). Except for one photograph which Defendants subsequently released, Plaintiff has not shown that the same photographs redacted by Defendants are publicly available. Although Gentry and Greenly have a lesser privacy interest in photographs that they voluntarily took, the Court finds that the public interest in showing their faces does not outweigh their privacy interests in protecting their own images. Accordingly, the Court shall deny-in-part Plaintiff's motion for summary judgment with respect to the redactions of Greenly's and Gentry's names and faces; the Court shall grant-in-part Defendants' motion for summary judgment with respect to these records.

## C.     The Presentence Report

Plaintiff objects to the withholding of the Presentence Investigation Report ("Presentence Report") prepared for the judge who sentenced Gentry and Greenly. Defendants have withheld

the Presentence Report in its entirety pursuant to FOIA Exemptions 3, 5, 6, and 7(C). According to the supplemental declaration of Marion Dean, the Presentence Report contains diagnostic opinions and offense level computations prepared by a probation officer for Greenly, including a narrative of the subject's criminal offense and behavior. Supp. Dean Decl. ¶ 8. Three pages in the report containing this information were withheld under Exemption 3. Dean Decl. ¶ 15. Ms. Dean also states that the report contains highly sensitive personal and financial information regarding Greenly and his family, and this material was withheld under Exemptions 6 and 7(C). Supp. Dean Decl. ¶ 10. Ms. Dean further states that the report was prepared by employees of the judicial branch and given to Defendants, and that the report is therefore an inter-agency memorandum not routinely available in civil discovery and thus exempt under Exemption 5. *Id.* ¶ 11. Plaintiff does not object to the withholding of certain information in the Presentence Report but contends that there are nonexempt parts of the report that must be disclosed and asks this Court to conduct an *in camera* inspection to determine whether segregable parts of the Presentence Report should be disclosed.

The Supreme Court has held that any information in a presentence report that relates to confidential sources, diagnostic opinions, and other information that may cause harm to the defendant or to third parties is exempt from disclosure under FOIA Exemption 3. *See U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 9 (1988) (holding that Federal Rule of Criminal Procedure 32(c)(3)(A) and 18 U.S.C. § 4208(c) prohibit disclosure as to these three categories of information). Thus, to the extent the Presentence Report contains this information, Defendants are justified in withholding it.

As discussed in the previous section, sensitive personal information may be withheld

under Exemptions 6 and 7(C) when the privacy interests are not outweighed by the public interest in disclosure.  According to Ms. Dean, personal identifying information for Mr. Greenly and his family are scattered throughout the report.  Supp. Dean Decl. ¶ 10.  This Court is familiar with the contents of presentence investigation reports and agrees that they contain highly sensitive information about convicted criminals awaiting sentencing.  It is for this very reason that the reports are generally not made publicly available to third parties.  *Julian*, 486 U.S. at 13.  Accordingly, it is appropriate to protect this information from disclosure to third parties pursuant to Exemption 6.  *See Crooker v. U.S. Parole Comm'n*, 760 F.2d 1, 4 n.2 (1st Cir. 1985) ("We suspect that exemption 6 would be invoked when the disclosure of presentence reports would implicate protectible privacy interests."); *Berry v. Dep't of Justice*, 733 F.2d 1343, 1352-53 (9th Cir. 1984) (noting that presentence reports may be withheld under Exemption 6).  Greenly's privacy interests in his Presentence Report are substantial.  By contrast, there is not a significant public interest in disclosure.  Accordingly, the Court finds that the Presentence Report is exempt from disclosure under Exemptions 6 and 7(C).

Defendants also invoke Exemption 5, which protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 522(b)(5).  Exemption 5 applies to materials that would be privileged in the civil discovery context, such as materials protected by the deliberative process privilege, the attorney-client privilege, and the attorney work-product privilege.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  In *Department of Justice v. Julian*, the Supreme Court held that Presentence Reports were not covered by Exemption 5 when they are requested by the prisoners themselves because they, unlike third parties, have a right to see

them.  *See* 486 U.S. at 12-14.  It appears to be an open question in this Circuit whether Exemption 5 applies to presentence reports requested by third parties on the grounds that such materials would not routinely be available in civil discovery.  Because it is unnecessary to reach this issue in light of the finding that the Presentence Report is covered by Exemptions 3, 6, and 7(C), the Court shall not address the parties' arguments regarding the applicability of Exemption 5.

The Court declines Plaintiff's request to review the Presentence Report *in camera*.  "If a district court believes that *in camera* inspection is unnecessary to make a responsible de novo determination on the claims of exemption, it acts within its broad discretion by declining to conduct such a review."  *Juarez v. Dep't of Justice*, 518 F.3d 54, 60 (D.C. Cir. 2008) (internal citations and quotation marks omitted).  Accordingly, the Court shall grant-in-part Defendants' motion for summary judgment with respect to withholding the Presentence Report.

### D.    Records Withheld Under Exemption 7(E)

Plaintiff objects to "numerous videos and photographs that were withheld in full" on Disk 7.[20]  Defendants have explained that the 33 files withheld in full on Disk 7 are withheld pursuant to FOIA Exemptions 6, 7(C), and 7(E).  *See* Supp. Dean Decl. ¶ 16.  Exemption 7(E) protects from disclosure law enforcement records that "would disclose techniques and procedures for law enforcement investigations . . . if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Information that relates to law enforcement techniques, policies, and procedures is properly withheld under this exemption.  *See Boyd v.*

---

[20] In its motion for summary judgment, Plaintiff also objected to three withheld pages that were not listed on Defendants' *Vaughn* index.  Defendants have since released those three pages. *See* Supp. Dean Decl. ¶ 18.

*Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 570 F. Supp. 2d 156, 158 (D.D.C. 2008).

According to the supplemental declaration of Marion Dean, these 33 files were withheld because they reveal specific details of surveillance techniques, including equipment used and location and timing of use, the revelation of which could compromise FWS's ability to conduct future investigations at various National Wildlife Refuges. Supp. Dean Decl. ¶ 16. Plaintiff contends that the statements of Ms. Dean are not specific enough to meet the agency's burden of establishing that the records withheld are exempt. The Court disagrees. Ms. Dean has explained that although trespassers and poachers on Wildlife Refuges likely know that they are subject to surveillance, the details of the surveillance techniques are unknown to them. Dean Decl. ¶ 29. The Court is satisfied that documents which disclose the location and timing of such surveillance could be reasonably expected to risk circumvention of the law. Accordingly, the Court finds that these 33 files may be withheld under Exemption 7(E). Because the records may be withheld in their entirety pursuant to that exemption, the Court need not address whether they may also be withheld pursuant to Exemptions 6 and 7(C). The Court shall grant-in-part Defendants' motion for summary judgment and deny-in-part Plaintiff's motion for summary judgment with respect to these files.

>    E.    *Segregability*

The Court has an affirmative obligation to address the issue of segregability *sua sponte*. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). FOIA requires that an agency produce "any reasonably segregable portion" of a record that is not exempt from disclosure. 5 U.S.C. § 552(b). According to her declaration, Marion Dean personally reviewed each of the documents included in the *Vaughn* index and conducted a

thorough segregability analysis. Dean Decl. ¶ 32. Ms. Dean avers that all reasonably segregable factual material has been released from the documents and disks included in the *Vaughn* index. *Id.* ¶ 33. The *Vaughn* index itself provides detailed descriptions of each document and portions that are withheld either in part or in whole. The Court has reviewed the *Vaughn* index and is satisfied that Defendants have produced all reasonably segregable nonexempt material.

## IV. CONCLUSION

For the foregoing reasons, the Court shall GRANT-IN-PART and DENY-IN-PART Defendants' [16] Motion for Summary Judgment Or Alternatively, Motion for Partial Summary Judgment and *In Camera* Review of Certain Records. Defendants' motion shall be granted except with respect to the three video recordings contained on Disks 6, 8, and 9, which Defendants shall disclose to Plaintiff after making any necessary redactions. The Court shall GRANT-IN-PART Plaintiff's Motion for Summary Judgment with respect to these three video recordings and DENY-IN-PART in all other respects. An appropriate Order accompanies this Memorandum Opinion.


Date: August 12, 2010


_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge